962 F.2d 258
 34 ERC 1980, 60 USLW 2747, 22
Fed.R.Serv.3d 469,
22 Envtl. L. Rep. 20,934
 AMERICAN LUNG ASSOCIATION, American Lung Association of
Nassau-Suffolk, American Lung Association of Queens,
American Lung Association of Brooklyn, Environmental Defense
Fund, Natural Resources Defense Council, State of New York,
State of Connecticut, Commonwealth of Massachusetts, State
of Maine, State of Rhode Island and Joseph Bergen,
Plaintiffs-Appellees,
v.
William K. REILLY, Administrator of the U.S. Environmental
Protection Agency and the U.S. Environmental
Protection Agency, Defendants-Appellees,
Alabama Power Company, Appalachian Power Company, Baltimore
Gas & Electric Company, Carolina Power & Light Company,
Centerior Energy Corporation, Cleveland Electric
Illuminating Company, Toledo Edison Company, Central & South
West Services, Inc., Central Power & Light Company, Public
Service Company of Oklahoma, Southwestern Electric Power
Company, West Texas Utilities Company; Central Hudson Gas &
Electric Corporation; Central Illinois Light Company;
Central Illinois Public Service Company; The Cincinnati Gas
& Electric Company; Columbus Southern Power Company;
Commonwealth Edison Company; Consolidated Edison Company of
New York, Inc.; Consumers Power Company; the Dayton Power
& Light Company; Delmarva Power & Light Company; the
Detroit Edison Company; Duke Power Company; Duquesne Light
Company; Florida Power & Light Company; Florida Power
Corporation; Georgia Power Company; Gulf Power Company;
Illinois Power Company; Indiana Michigan Power Company;
Indianapolis Power & Light Company; Iowa Public Service
Company; Kansas City Power & Light Company; Kentucky Power
Company; Kentucky Utilities Company; Madison Gas &
Electric Company; Minnesota Power Company; Mississippi
Power Company; Monongahela Power Company; NYS Electric &
Gas Corporation; Northern Indiana Public Service Company;
Oglethorpe Power Corporation; Ohio Edison Company;
Pennsylvania Power Company; Ohio Power Company; Ohio
Valley Electric Corporation; Oklahoma Gas & Electric
Company; Pacificorp Electric Operations; Pacific Gas &
Electric Company; Pennsylvania Power & Light Company; the
Potomac Edison Company; Potomac Electric Power Co.; PSI
Energy, Inc.; Public Service Electric & Gas Company; Salt
River Project; Savannah Electric & Power Company; South
Carolina Electric & Gas Company; Southern California Edison
Company; Tampa Electric Company; Tucson Electric Power
Company; Union Electric Company; Virginia Power; West
Penn Power Company; Wisconsin Electric Power Company;
Wisconsin Power & Light Company; Wisconsin Public Service
Corporation; Edison Electric Institute; American Public
Power Association; National Rural Electric Cooperative
Association; Appellants.
 Docket 92-6060.
 United States Court of Appeals,
Second Circuit.
 Argued April 15, 1992.
Decided May 4, 1992.
 
 Henry V. Nickel, Washington, D.C. (Lucinda Minton Langworthy, Norman W. Fichthorn, Hether C. Macfarlane, Hunton & Williams, Washington, D.C.; Franklin H. Stone, Harold C. Geary, Hunton & Williams, New York City, of counsel), for appellants.
 Robert J. Zastrow, New York City (Karen S. Jore, Gregory R. Belcamino, Strook & Strook & Lavan, of counsel), for plaintiffs-appellees American Lung Ass'n, American Lung Ass'n of Nassau-Suffolk, American Lung Ass'n of Queens, American Lung Ass'n of Brooklyn, Environmental Defense Fund and Joseph Bergen.
 Robert Abrams, Atty. Gen. of the State of New York (Peter H. Schiff, Deputy Sol. Gen.; Joan Leary Matthews, Asst. Atty. Gen., New York State Dept. of Law, of counsel), for plaintiff-appellee State of N.Y.
 Craig D. Galli, U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Defense Section (Gerald K. Gleason, of counsel), filed a letter for defendants-appellees.
 Before: TIMBERS and PRATT, Circuit Judges, and Michael B. MUKASEY, District Judge of the United States District Court for the Southern District of New York, sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Sixty-seven electric utilities and three electric utility industry associations (collectively, "utilities") appeal from an order of the United States District Court for the Eastern District of New York, John R. Bartels, Judge, which denied their motion to intervene as of right as defendants in a citizen suit brought under the Clean Air Act, 42 U.S.C. § 7401 et seq., to compel the Environmental Protection Agency (EPA) to review and revise the national ambient air quality standards (NAAQSs) for ozone, 141 F.R.D. 19 (E.D.N.Y.1992). We conclude that Judge Bartels acted within his discretion in denying the utilities' motion to intervene. We also determine that the district court had subject-matter jurisdiction of the action. Accordingly, we affirm.
 
 I.
 
 2
 Under the Clean Air Act, EPA was required to make a final decision (either to revise the NAAQSs or retain the old ones) no later than December 31, 1990. Since EPA had not (and still has not) done so, plaintiffs filed this suit in the Eastern District of New York, alleging that it had breached its non-discretionary, statutory duty of reviewing (and if necessary revising), at five-year intervals, the NAAQSs for ozone, see 42 U.S.C. § 7409(d) (1977). Plaintiffs sought to compel EPA to perform its statutory duties. Specifically, the plaintiffs sought to compel EPA to (a) publish, within 180 days of the district court's order, either proposed revisions to the NAAQSs or a proposed decision formally declining to revise the NAAQSs, (b) provide the public with opportunity for notice and comment, and (c) promulgate final regulations thereafter.
 
 
 3
 The utilities moved to intervene as parties defendant. Their proposed answer asserted two defenses: (1) that "[t]he complaint fails to state a claim against Defendants upon which relief can be granted", and (2) that the district court "lacks subject matter jurisdiction over the Plaintiffs' complaint." Judge Bartels denied the motion to intervene, and the utilities filed a notice of appeal on February 27, 1992.
 
 
 4
 The next day, February 28, 1992, Judge Bartels signed a consent order and final judgment which, inter alia, ordered EPA, by August 1, 1992, to publish a proposed decision, made pursuant to notice and comment rulemaking procedures, to revise (or not) the existing NAAQSs for ozone. Judge Bartels also ordered EPA to allow a public comment period of at least 60 days, and then to publish a final decision by March 1, 1993.
 
 II.
 
 5
 A denial of intervention as of right under Fed.R.Civ.P. 24(a)(2) is reviewed under an abuse of discretion standard, as only the district judge has the "feel of the case" necessary to "weigh the advantages to be derived from appellants' participation as intervenors". United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 991 (2d Cir.1984) (Friendly, J.). To merit consideration for intervention under rule 24(a)(2), a movant must (1) file a timely application, (2) claiming an interest relating to the property or transaction which is the subject of the action, (3) with the movant so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest, (4) unless the movant's interest is adequately represented by existing parties. Washington Elec. v. Massachusetts Mun. Wholesale Elec., 922 F.2d 92, 96 (2d Cir.1990). See also Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir.1984).
 
 
 6
 Judge Bartels concluded that the motion was timely, but that the utilities fell short on the other three requirements of rule 24(a)(2). With respect to the second requirement, he saw the utilities' interest in the subject matter of the action as based on a "double contingency" of events: "first, the plaintiffs must prevail in this lawsuit and second, the defendants must then downwardly revise the NAAQS[s]". Thus, he concluded, the utilities' interests were too "remote from the subject matter of the proceeding" and too "contingent upon the occurrence of a series of events." (citing Washington Elec., 922 F.2d at 96). With respect to the third requirement, he concluded that since the utilities could participate in any NAAQS rulemaking ordered by the court, a judgment in favor of the plaintiffs could not as a practical matter impair the utilities' ability to challenge any defect of any subsequent rulemaking. As to the fourth requirement, Judge Bartels concluded that the utilities could not demonstrate an interest in the rulemaking schedule that would not be adequately represented by EPA.
 
 
 7
 On appeal the utilities claim primarily that their interest is not so much in the ultimate rule promulgated by the EPA, as Judge Bartels understood it to be, but in having an opportunity to help shape the schedule for this judicially-compelled rulemaking. The utilities argue that they might have insufficient time to prepare a response to any proposal or to submit comments during the judicially-established comment period. They further point out that absent intervention, they would have no standing to obtain an extension of the deadlines imposed by the district court. To this end, they inform us of numerous cases, mostly from district courts, that have allowed intervention in similar cases.
 
 
 8
 The utilities' arguments are inadequate to overcome the district court's discretionary denial of intervention. First, as the plaintiffs have correctly pointed out, the cases cited by the utilities that have allowed intervention are primarily cases involving the promulgation of rules for particular industries. In such cases, an industry applying for intervention would have a much less "remote" or "contingent" interest. See, e.g., ManaSota-88, Inc. v. Tidwell, 896 F.2d 1318, 1322 (11th Cir.1990). Second, the utilities "have asked for little that is new or even particularly different" from the defenses asserted by EPA. Hooker Chemicals, 749 F.2d at 991. Third, even had EPA obeyed the schedule commanded by the statute, there would have been no guarantee that even the seven months prescribed by the district court's order would have been available for "meaningful and effective" comment. See 42 U.S.C. § 7409(d). Finally, the statute requires EPA to base its decisions on the latest scientific knowledge that bears upon a given NAAQS. 42 U.S.C. § 7409(b)(1). There is no reason to believe that EPA will shirk its statutory duty to solicit and consider such information, or that the utilities and their experts will not have adequate opportunity to present their views.
 
 
 9
 Judge Bartels acted within his discretion. "The circumstances that serve as a basis for decision [on motions to intervene] are so varied and random that the court would virtually need to create a new rule to describe each case." Gene R. Shreve, Questioning Intervention as of Right--Toward a New Methodology of Decisionmaking, 74 Nw.U.L.Rev. 894, 922-23 (1980) (footnotes omitted) (quoted in Hooker Chemicals, 749 F.2d at 991 n. 20).
 
 III.
 
 10
 The utilities raise a question as to subject-matter jurisdiction, not discussed by the district court; but since we have "a special obligation" to satisfy ourselves of our own jurisdiction as well as that of the district court, Bender v. Williamsport Area School Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986), we consider the issue on our own motion and conclude that the district court properly exercised jurisdiction over the plaintiffs' complaint.
 
 
 11
 Section 304 of the Clean Air Act, 42 U.S.C. § 7604(a) (1990), reads, in pertinent part:
 
 
 12
 Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf--
 
 
 13
 * * * * * *
 
 
 14
 (2) against the Administrator where there is an alleged failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator * * *.
 
 
 15
 * * * * * *
 
 
 16
 The district courts shall have jurisdiction * * * to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform any act or duty, as the case may be, and to apply any appropriate civil penalties (except for actions under paragraph (2)). The district courts of the United States shall have jurisdiction to compel (consistent with paragraph (2) of this subsection) agency action unreasonably delayed, except that an action to compel agency action referred to in section 7607(b) of this title which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under section 7607(b) of this title. In any such action for unreasonable delay, notice to the entities referred to in subsection (b)(1)(A) of this section shall be provided 180 days before commencing such action.
 
 
 17
 Section 7607(b), which is referred to in the above-quoted section, provides that a "petition for review of * * * any other nationally-applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1).
 
 
 18
 The utilities argue that (1) Judge Bartels' final order would result in a "nationally applicable regulation[ ]" referred to in § 7607(b); (2) this makes the instant case "an action to compel agency action referred to in section 7607(b) of this title which is unreasonably delayed"; and (3) this action thus "may only be filed in a United States District Court within the circuit in which such action would be reviewable under section 7607(b)", i.e., the United States District Court for the District of Columbia.
 
 
 19
 We disagree. The utilities' syllogism is bottomed on a fallacy, namely their theory that "Clean Air Act nondiscretionary-duty cases are a subset of unreasonable delay cases." Utilities' brief at 40. The two categories, however, are distinct. When the administrator misses a statutorily-imposed deadline, his failure is not reviewed on a "reasonableness" basis. Only when a statute requires agency action at indefinite intervals, such as "from time to time", can "unreasonable delay" be a meaningful standard for judicial review. In contrast, when, as here, a statute sets forth a bright-line rule for agency action, such as in 42 U.S.C. § 7409(d)(1) ("Not later than December 31, 1980, and at five-year intervals thereafter, the Administrator shall complete a thorough review * * *."), there is no room for debate--congress has prescribed a categorical mandate that deprives EPA of all discretion over the timing of its work. Sierra Club v. Thomas, 828 F.2d 783, 791 (D.C.Cir.1987).
 
 
 20
 We have previously recognized this distinction between bright-line deadlines and "reasonable" "deadlines" in Environmental Defense Fund v. Thomas, 870 F.2d 892, 897 (2d Cir.) ("revision provisions that do include stated deadlines should, as a rule, be construed as creating non-discretionary duties."), cert. denied, 493 U.S. 991, 110 S.Ct. 537, 107 L.Ed.2d 535 (1989), and Natural Resources Defense Council v. Thomas, 885 F.2d 1067, 1075 (2d Cir.1989). The 1990 amendments to the Clean Air Act did not change this distinction, which is vital for jurisdictional purposes. The failure to revise the NAAQSs "at five-year intervals" does not present a case of "agency action unreasonably delayed" that would confer exclusive jurisdiction on the district court for the District of Columbia; thus, the district court for the Eastern District of New York properly exercised jurisdiction over the complaint.
 
 IV.
 
 21
 The order of the district court is affirmed.